Karolina Kulesza, Bar No. 15504
*kkulesza@lawdbd.com*
**DRIGGS, BILLS & DAY, P.C.**
331 South 600 East
Salt Lake City, UT 84102
Telephone: (801) 363-9982
Facsimile: (801) 931-2552
**Attorney for Plaintiff**

[Additional counsel on signature page]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| EDWARD LESLIE, individually and on behalf of all others similarly situated,<br><br>**Plaintiff,**<br><br>v.<br><br>JOHN C. HEATH ATTORNEY AT LAW, PROFESSIONAL LIMITED LIABILITY COMPANY d/b/a LEXINGTON LAW, a Utah professional limited liability company,<br><br>**Defendant.** | Civil No. 2:15-cv-00833-PMW<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Magistrate Judge Paul M. Warner |

**TABLE OF CONTENTS**

I. **INTRODUCTION** ...................................................................................1

II. **LEGAL STANDARD** ..............................................................................3

III. **ARGUMENT** .........................................................................................5

    A. **This Court – Not An Arbitrator – Determines The Threshold Question Of Arbitrability.** ...............................................5

    B. **Plaintiff Did Not Agree To Arbitrate His Claims.** ..............................6

        1. Plaintiff Did Not Consent To Be Contacted By Lexington Or Enter Into Any Agreement With Lexington. ............................7

        2. Even If Defendant Could Connect Plaintiff To The Third Party Website, Plaintiff Did Not Agree To Arbitrate His Claims. ..........10

        3. The Conclusory Declaration Of John C. Heath In Support Of Defendant's Motion To Compel Arbitration Is Inadmissible. ..............14

IV. **CONCLUSION** ....................................................................................15

# TABLE OF AUTHORITIES

### CASES

*Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013) ---- 7
*AT & T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) ---- 4
*AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643 (1986) ---- passim
*Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279 (10th Cir. 1997) ---- 4
*Be In, Inc. v. Google Inc.*, No. 12-CV-03373-LHK, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) 3
*Butler Products Co. v. Unistrut Corp.*, 367 F.2d 733 (7th Cir. 1966) ---- 2
*Day v. Microsoft Corporation*, No. C13-478-RSM, 2014 WL 243159 (W.D. Wash. Jan. 22, 2014) ---- 13
*EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002) ---- 4
*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ---- 6, 7
*GGNSC Stanford, LLC v. Rowe*, 388 S.W.3d 117 (Ky.Ct.App.2012) ---- 4
*Hancock v. Am. Tel. and Tel. Co., Inc.*, 701 F. 3d 1248 (10th Cir. 2012) ---- 12
*In re Hulu Privacy Litig.*, C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ---- 8
*Kraft Real Estate Investments, LLC v. HomeAway.com, Inc.*, 4:08-CV-3788, 2012 WL 220271 (D.S.C. Jan. 24, 2012), *appeal dismissed* (Mar. 13, 2012) ---- 8
*McCoy v. Blue Cross & Blue Shield of Utah*, 2001 UT 31, 20 P.3d 901 (Utah 2001) ---- 4, 9
*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ---- 3, 12, 14
*Nuhn v. Broadbent*, 507 P.2d 371 (Utah 1973) ---- 7
*Sgouros v. TransUnion Corp.*, No. 15-1371, 2016 WL 1169411 (7th Cir. Mar. 25, 2016) ---- 2
*Sherman v. AT&T Inc.*, No. 1:2011-CV-5857, 2012 WL 1021823 (N.D. Ill. Mar. 26, 2012) (unpublished) ---- 13
*Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002) ---- 3, 14
*Swift v. Zynga*, 805 F. Supp. 2d 904 (N.D. Cal. 2011) ---- 13
*Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379 (7th Cir. 2007) ---- 3

### STATUTES

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ---- 1

### OTHER AUTHORITIES

4 Am. Jur. 2d Alternative Dispute Resolution § 98; 92 Am. Jur. Proof of Facts 3d, *Arbitrability Disputes: Proving What Facts to Whom*, 1 (2006) ---- 4
Archibald Cox, *Reflections Upon Labor Arbitration*, 72 HARV. L. REV. 1482, 1508-09 (1959) -- 5
Google fiber, *Static vs. dynamic IP addressing*, https://support.google.com/fiber/answer/3547208?hl=en (last visited Mar. 30, 2013) ---- 7
No-IP.com, *What is a Dynamic IP Address?*, http://www.noip.com/support/knowledgebase/what-is-a-dynamic-ip-address/ (last visited Mar. 30, 2016) ---- 7

Plaintiff EDWARD LESLIE ("Plaintiff"), by and through his counsel, hereby submits this Memorandum of Points and Authorities in Opposition to Defendant John C. Heath, Attorney at Law, PLLC, d/b/a Lexington Law Firm's ("Defendant" or "Lexington") Motion to Compel Arbitration.

## I.   INTRODUCTION

Plaintiff alleges that Defendant plagued the wireless telephones of himself and a class of similarly situated individuals with spam calls and voicemails in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"). On August 11, 2015, Plaintiff received the first of multiple pre-recorded voicemails from Lexington Law Firm, which offered credit repair services. Despite having no previous relationship with Lexington Law Firm, never requesting or consenting to be contacted by Lexington Law Firm, and in fact not even knowing about Lexington Law Firm's existence, Plaintiff was harassed with numerous calls and voicemails before Defendant finally respected Plaintiff's requests to be removed from the call list. In response to Plaintiff's action, Defendant now seeks to compel individual arbitration. Defendant's motion should be denied for several reasons.

First, this Court – not an arbitrator – should determine whether the parties agreed to arbitrate, as Defendant fails to establish that the parties "clearly and unmistakably" agreed otherwise. *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986); *Butler Products Co. v. Unistrut Corp.*, 367 F.2d 733, 736 (7th Cir. 1966) ("[T]he remedy of arbitration should be refused by the court where there is no agreement to arbitrate.").

Second, no valid agreement to arbitrate was formed. As detailed herein, Defendant contends that Plaintiff is bound to Lexington's Terms of Use, which include its arbitration

provision, because Plaintiff visited a third party website. (Def.'s Mot. at 2-3). According to Defendant, Plaintiff agreed to the Terms of Use containing the arbitration agreement at the same time as requesting to be contacted by Lexington for a credit repair consultation. *Id.* Contrary to these contentions, Plaintiff never visited the third party website in question, never requested that Lexington contact him, and never assented to Lexington's Terms of Use or the arbitration provision. (Declaration of Edward Leslie ("Leslie Decl."), Ex. A, at ¶¶ 3-5; 7-9). Plaintiff had never even heard of Lexington Law Firm before receiving calls, nor had he ever seen the third party website identified in Defendant's motion until that motion was filed. (Leslie Decl., Ex. A, at ¶¶ 2-3).

Finally, Defendant does not require individuals to view the Terms of Use containing the arbitration clause. As such, Defendant seeks to enforce a "browsewrap" agreement. Federal courts have repeatedly struck down so-called "browsewrap" agreements, like the one here, on the grounds that they were insufficient to establish the assent necessary for a binding contract. *See, e.g., Sgouros v. TransUnion Corp.*, No. 15-1371, 2016 WL 1169411, at *4 (7th Cir. Mar. 25, 2016) ("No court has suggested that the presence of a scrollable window containing buried terms and conditions of purchase or use is, in itself, sufficient for the creation of a binding contract, and we have no reason to think that Illinois would be the first."); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178-79 (9th Cir. 2014) ("[W]e therefore hold that where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice."); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d

17, 35 (2d Cir. 2002) ("Reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility."); *Be In, Inc. v. Google Inc.*, No. 12-CV-03373-LHK, 2013 WL 5568706, at *9 (N.D. Cal. Oct. 9, 2013) ("[A party's] mere use of the website can only serve as a manifestation of assent where [the party] had, or should have had, reason to know that mere use would be so interpreted."). *Cf. Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379 (7th Cir. 2007) (finding terms and conditions binding on a plaintiff when ***undisputed*** evidence demonstrated that he had to ***click agreement*** to the terms and conditions in order to ship a package using the website). Accordingly, Lexington has not carried its burden of establishing the mutual assent required to enforce an arbitration agreement, even if it had established that Plaintiff visited the third party website in question.

Accordingly, Lexington's motion should be denied in full.

## II. **LEGAL STANDARD**

As the Supreme Court has made clear, the existence of an agreement to arbitrate is the essential condition that must be satisfied *before* the rest of the Federal Arbitration Act ("FAA") comes into play. *AT & T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749 (2011) ("The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"); *see also AT&T Tech.*, 475 U.S. at 648 ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (internal quotation marks omitted). The FAA "does not require parties to arbitrate when they have not agreed to do so." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).

Because the FAA "was not enacted to force parties to arbitrate in the absence of an agreement . . . [t]he existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1286-87 (10th Cir. 1997). Lexington is seeking to enforce a contract. Like any contract formation dispute, the Court "looks to state law principles of contract formation to tell us whether an agreement to arbitrate has been reached." *Id.* at 1287. It is the party seeking judicial enforcement of an arbitration agreement, in this case Lexington, who bears the burden of persuading this Court that a valid and enforceable agreement to arbitrate exists and that its terms bind Plaintiff. 4 Am. Jur. 2d Alternative Dispute Resolution § 98; 92 Am. Jur. Proof of Facts 3d, *Arbitrability Disputes: Proving What Facts to Whom*, 1 (2006). *See McCoy v. Blue Cross & Blue Shield of Utah*, 2001 UT 31, ¶ 17, 20 P.3d 901, 905 (Utah 2001) ("Because parties to binding arbitration waive substantial rights to formal public adjudication of their disputes, the Act demands, as a minimum threshold for its enforcement, direct and specific evidence of an agreement between the parties. In the absence of such direct evidence, the proponent of arbitration has failed to 'show an agreement to arbitrate,' as required by the Act."); *GGNSC Stanford, LLC v. Rowe*, 388 S.W.3d 117, 121 (Ky.Ct.App.2012) ("The party who raises an arbitration agreement as a bar to court proceedings bears the burden of showing a valid arbitration agreement exists.").

Defendant has not met its burden. Its motion and supporting declaration of John C. Heath amount to nothing more than conclusory speculation. Defendant has offered no real evidence to support its contention that Plaintiff ever had the opportunity to see the subject arbitration agreement, let alone assent to it.

## III. ARGUMENT

### A. This Court – Not An Arbitrator – Determines The Threshold Question Of Arbitrability.

This Court, and not an arbitrator, should make the threshold decision as to whether Plaintiff agreed to arbitrate his claims, though Lexington encourages otherwise. (Def.'s Mot. at 11-12). Arbitrability "is undeniably an issue for judicial determination," and should only be settled by an arbitrator if the parties agreed to allow the arbitrator to decide that question. *AT&T Tech.*, 475 U.S. at 649. While parties can agree to delegate threshold arbitrability questions to the arbitrator, the Supreme Court has imposed a heightened standard when a party asserts that the arbitrator should decide arbitrability issues. Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clear[] and unmistakabl[e]" evidence that they did so. *See AT&T Tech.*, 475 U.S. at 649. Lexington comes nowhere near to satisfying this heightened standard.

There is no clear and unmistakable evidence that the parties intended to delegate the issue of arbitrability to the arbitrator in this case. Notwithstanding the language contained in the arbitration agreement attached to Defendant's motion as Exhibit D, because Plaintiff did not agree to the Terms of Use he likewise did not agree to arbitrate any portion of this dispute, including the gateway question of arbitrability. (Leslie Decl., Ex. A, at ¶¶ 7-9). The Supreme Court has held that by default, courts should decide arbitrability because the question of "'who (primarily) should decide arbitrability'" is "'rather arcane,'" and "'[a] party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers.'" *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) (citing Archibald Cox, *Reflections Upon Labor Arbitration*, 72 HARV. L. REV. 1482, 1508-09 (1959)).

As detailed below, Defendant has not shown a clear agreement to delegate *any* claim or issue to an arbitrator, including the threshold issue of arbitrability.

### B. Plaintiff Did Not Agree To Arbitrate His Claims.

Lexington fails to meet its burden of showing that Plaintiff entered into an agreement to arbitrate the claims that are the subject of this action. Because the existence of an *agreement* is a prerequisite to granting a motion to compel arbitration, Lexington bears the burden of showing that a valid and enforceable agreement to arbitrate exists and that its terms bind Plaintiff. *First Options*, 514 U.S at 944; *Nuhn v. Broadbent*, 507 P.2d 371, 372 (Utah 1973)). Defendant rightly points out that both Utah and Federal law favor arbitration. (Def.'s Mot. at 10). *See Sanchez v. Nitro-Lift Tech., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014). Nevertheless, "the fundamental principle that arbitration is a matter of contract" must not be forgotten. *Id*. at 1145. Consistent with this principle, "'courts must place arbitration agreements on equal footing with other contracts,'" and "'a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'" *Id.* (citing *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) and *AT&T Techs.*, 475 U.S. at 648-49).

First, Plaintiff did not visit the third party website identified in Defendant's motion as being the avenue through which he consented to the arbitration agreement (http://rentownhomelisting.com/). (Def.'s Mot. at 2-3, Heath Decl, Ex. A, ¶¶ 4-5). Consequently, Plaintiff never saw Lexington's Terms of Use containing the arbitration agreement. Defendant has not presented any evidence tying Plaintiff to the alleged website. Moreover, even if Defendant were able to somehow connect Plaintiff or his Internet Protocol

("IP") address[1] to the third party website, Plaintiff never assented to arbitrate his claims because the arbitration clause was contained within an invalid "browsewrap" agreement which Plaintiff would not have been required to view.

### 1. Plaintiff Did Not Consent To Be Contacted By Lexington Or Enter Into Any Agreement With Lexington.

Lexington has not included as exhibits to its motion copies of any records establishing Plaintiff's assent to the Terms of Use, much less the arbitration provision. As such, there is no admissible evidence demonstrating Plaintiff's assent to the arbitration provision and, thus, no proof that any contract was formed. On this basis alone, Lexington's motion should be denied and the case should proceed before this Court.

Instead of providing evidence of Plaintiff's actual assent, Lexington provides screenshots of a process it assumes Plaintiff must have gone through in order to assent to the arbitration agreement through a third party website, http://rentownhomelisting.com/. (Def.'s Mot., Exs. B-C). These screenshots are not copies of any action taken online by Plaintiff. Neither Plaintiff's name, IP address, nor any other identifying information link these screenshots or this alleged consent process to Plaintiff. Rather, they are presumably, screenshots taken by Defendant in preparation for its motion. They merely present an example of the manner in which an individual might possibly consent to Lexington's Terms of Use online. In no way do they establish Plaintiff's actions. *See Kraft Real Estate Investments, LLC v. HomeAway.com, Inc.*,

---

[1] Every computer, tablet, smart phone, and Internet enabled device has its own IP address. An IP address consists of numbers and periods, and each Internet enabled device is assigned its own IP address. Without it, a computer is unable to connect to the Internet. *See* No-IP.com, *What is a Dynamic IP Address?*, http://www.noip.com/support/knowledgebase/what-is-a-dynamic-ip-address/ (last visited Mar. 30, 2016) [hereinafter "No-IP"]; *see also* Google fiber, *Static vs. dynamic IP addressing*, https://support.google.com/fiber/answer/3547208?hl=en (last visited Mar. 30, 2013).

4:08-CV-3788, 2012 WL 220271, at *8 (D.S.C. Jan. 24, 2012), *appeal dismissed* (Mar. 13, 2012) (screen shot with arbitration clause not sufficient to compel arbitration where defendant did not establish that plaintiff was aware of and read the notice). *In re Hulu Privacy Litig.*, C 11-03764 LB, 2014 WL 1724344, at *1, *17 (N.D. Cal. Apr. 28, 2014) (denying summary judgment: "Hulu's only legal argument is its citation to a case about how an online 'click-to-accept-terms' form can result in a contract. The court cannot conclude on this record, with this argument, and as a matter of law that there was consent.")

Despite Defendant's contentions, Plaintiff never sought or consented to any relationship whatsoever with Lexington. Defendant claims that on or about August 11, 2015, Plaintiff visited the website http://rentownhomelistings.com/. (Def.'s Mot. at 2). To the best of his recollection, Plaintiff has never visited the website http://rentownhomelistings.com/. (Leslie Decl., Ex. A, at ¶¶ 3-4). Defendant presents no evidence that Plaintiff did so as the burden of persuasion requires Defendant to do. Defendant's motion and accompanying exhibits are void of such evidence, instead providing only conclusory conjecture of the online actions it speculates Plaintiff took. (*See* Plaintiff's Objections to Declaration of John C. Heath, filed concurrently herewith.)

Likewise, Defendant claims Plaintiff voluntarily provided his contact information and clicked a "View Listings" link, whereby he consented to being contacted by a representative from certain "marketing partners" including Defendant. (Def.'s Mot. at 2). Plaintiff did not voluntarily provide his contact information and did not click the "View Listings" link at http://rentownhomelistings.com/. (Leslie Decl., Ex. A, at ¶ 4). Again, Defendant's support for its assumption that Plaintiff clicked the "View Listings" link is nonexistent. The sole support Defendant gives for the position that Plaintiff should be stripped of his "substantial right" to

bring an action in court and to serve as a class representative is the Declaration of John C. Heath. *McCoy*, 2001 UT 31, ¶ 17, 20 P.3d at 905. Mr. Heath, however, is neither the owner nor employee for the website http://rentownhomelistings.com/. Yet, he purports to know the exact actions Plaintiff allegedly took on a third party website to affirmatively seek Lexington's services and agree to arbitration.

The screenshots provided as Exhibit B to Defendant's Motion do not show evidence of Plaintiff agreeing to arbitrate his claims. All the screenshots show is how a person could – hypothetically – consent to be contacted by Defendant and allegedly agree to Defendant's "Terms of Use." None of the screenshots bear Plaintiff's name, IP address or other identifying information. In fact, reference to Plaintiff's IP address actually performing the actions contemplated in Defendant's Motion and accompanying Exhibits is completely absent.

Furthermore, Defendant next claims that Plaintiff, after clicking the "View Listings" link, "was directed to a page asking if he would like a credit repair specialist from Lexington to contact him to assist him in repairing his credit," where Plaintiff affirmatively clicked "Yes." (Def.'s Mot. at 3). Plaintiff, however, never visited http://rentownhomelistings.com/ and, hence, never arrived at the "View Listings" link that he did not click. Further, Plaintiff also never affirmatively requested credit repair services. (Leslie Decl., Ex. A, at ¶ 7). Plaintiff has no need for such services, because he knows how to manage and look after his own credit. That is precisely why Plaintiff has never before requested credit repair consultation. And he certainly did not request such services from Defendant on August 11, 2015. (*Id.*).

Defendant has failed to connect Plaintiff or his IP address to Lexington's Terms of Use. Plaintiff accesses the Internet through his residential Internet Service Provider ("ISP"). Most

residential users have "dynamic" IP addresses.[2] "A dynamic IP address is one that changes from time to time and isn't always the same", which residential ISPs often assign to customers "because they are more cost effective."[3] Therefore, Plaintiff assumes, but is not certain, that his IP address is dynamic and may not be the same today as it was on August 11, 2015.

Upon receiving Defendant's motion, Plaintiff desired to resolve this controversy without burdening the Court if at all possible. Accordingly, Plaintiff's counsel proposed to counsel for Defendant a stay of the briefing on this motion while Plaintiff sought leave from this Court to conduct expedited discovery limited to the issue of discovering Plaintiff's IP address on August 11, 2015. Plaintiff believed that, by issuing a subpoena to Plaintiff's ISP, he would be able to discover what his IP address was and what websites he visited on August 11, 2015. This expedited discovery would have resolved the instant dispute and obviated the need for briefing and arguing Defendant's motion. Unfortunately, Defendant represented that it would oppose any motion to take limited, expedited discovery before the Rule 26(f) conference. (*See* Declaration of Ismael Salam, ("Salam Decl.") at ¶ 2).

        2.      Even If Defendant Could Connect Plaintiff To The Third Party Website, Plaintiff Did Not Agree To Arbitrate His Claims.

The required mutual assent to the arbitration provision is lacking because Plaintiff never saw Lexington's arbitration clause or agreed to arbitrate his claims against Defendant. Plaintiff never visited the website http://rentownhomelistings.com/ and, therefore, was never presented with Defendant's offer of credit repair services. (Leslie Decl., Ex. A, at ¶¶ 3-4; 7). Likewise, because Plaintiff never clicked "Yes" in response to Defendant's offer of credit repair

---

[2] No-IP, *supra* n. 1.
[3] *Id.*

services, Plaintiff did not "agree by electronic signature to" Defendant's "Terms of Use" containing the arbitration clause. (Def.'s Mot. at 3 and Ex. B thereto; Leslie Decl., Ex. A, at ¶¶ 8-9). Plaintiff was never on the alleged website and never asked for credit repair services from Defendant, and so it necessarily follows that Plaintiff never even saw Defendant's arbitration clause. Plaintiff cannot be bound by an agreement which he never even had the opportunity to view.

Moreover, Defendant does not require individuals to view the Terms of Use containing the arbitration clause. As is evident from Exhibits A through C to Defendant's motion, if Plaintiff would have requested to be contacted by Lexington, he would not have had to view the Terms of Use containing the arbitration agreement that Defendant seeks to enforce. The Terms of Use are contained in a hyperlink that the user is *not* required to open before proceeding to use the website. As such, Defendant seeks to enforce a "browsewrap" agreement. A browsewrap agreement is an agreement that is posted on a website via a hyperlink, generally at the bottom of the screen which, unlike a "clickwrap" agreement, does not require the user to manifest assent to the terms and conditions expressly." *Nguyen*, at 1176. Clickwrap agreements are characterized by requiring the user to affirmatively "click on an 'I agree' box after being presented with a list of terms and conditions of use" before proceeding any further on the website. *Id*. at 1175-76.

Contrary to Defendant's assertion that the instant controversy contemplates an ordinary clickwrap agreement (Def.'s Mot. at 9), in reality it more closely resembles a browsewrap agreement. As is evident from Exhibit C to Defendant's motion, if a user were to seek help from a credit repair specialist, he would click a green box stating "Yes, I would like a credit repair specialist to contact me and assist in repairing my credit." (Def.'s Mot., Ex. C.) Thus, the user

would click "Yes" with respect to being contacted by a credit repair specialist, but *not* with respect to accepting the Terms of Use. The Terms of Use are only referenced below the offer for credit repair assistance, via a hyperlink in small, grey font as is typical of a browsewrap agreement. The user is not required to click a box stating that he or she agrees to the Terms of Use, as a clickwrap agreement would require.

Defendant's reliance on *Hancock v. Am. Tel. and Tel. Co., Inc.*, 701 F. 3d 1248 (10th Cir. 2012) is misplaced. Lexington's Terms of Use are not displayed in the same manner as were the terms of service to which the plaintiff agreed in *Hancock*, 701 F. 3d at 1258 ("[C]ustomers affirmatively manifest assent to the terms of service by clicking the 'I Agree' and 'I Acknowledge' buttons" and customers cannot receive service until they affirmatively accept the terms of service). Lexington does not require users to click "I Agree" before requesting to be contacted. (Def.'s Mot., Ex. C). Likewise, the other cases to which Defendant cites are dissimilar. In *Day v. Microsoft Corporation*, No. C13-478-RSM, 2014 WL 243159, at *1-2 (W.D. Wash. Jan. 22, 2014), the Windows 8 Pro customer had to affirmatively check a box stating "I accept the license terms" as well as an "Accept" button before the software would begin installing. In *Sherman v. AT&T Inc.*, No. 1:2011-CV-5857, 2012 WL 1021823, at *1 (N.D. Ill. Mar. 26, 2012) (unpublished), to activate his Internet service, the plaintiff was "required to complete an online registration process, during which he was asked to check a box labeled 'I have read and agree to the AT&T Terms of Service,'" and was unable to access the Internet until he checked the box.

Thus, the situations in the cases on which Defendant relies are not analogous to the the circumstances before this Court. Even if Plaintiff requested that Lexington contact him regarding

-12-

credit repair services on a webpage identical to that of Exhibit C of Defendant's motion – he did not – Plaintiff would not have been required to click an "I Accept" box in reference to the Terms of Use. This fact alone renders *Swift v. Zynga*, 805 F. Supp. 2d 904, 911 (N.D. Cal. 2011) inapposite. Defendant contends that the small, grey-type reference to the Terms of Use below the large, green "contact me" button is enough to bind anyone who clicks the "contact me" button. The weight of authority, however, disagrees with this contention. Nevertheless, the Court need not decide this issue, as Plaintiff was never on the website in the first place. (*See* Leslie Decl., Ex. A, ¶¶ 4-5).

Federal courts have repeatedly struck down so-called browsewrap agreements, like the one here, on the grounds that they were insufficient to establish the assent necessary for a binding contract. *Specht*, 306 F.3d at 35; *Be In*, 2013 WL 5568706, at *9; *Nguyen*, 763 F.3d at 1178-89. For example, the court in *Specht* held that plaintiff Internet users were not bound by a browsewrap license agreement requiring arbitration because there was no evidence of mutual assent. *Specht*, 306 F.3d at 17. In affirming the lower court's decision to deny arbitration, the court explained that a consumer would not have known of the license terms since the reference and hyperlink to the license agreement were located further down the webpage. *Id.* at 31, 35. The court concluded that the browsewrap agreement was insufficient to establish assent since an offeree "is not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious." *Id.* at 30, 35. As demonstrated herein, Defendant has not carried its burden of establishing Plaintiff's assent to arbitrate his claims.

Furthermore, according to Defendant's motion, while seeking to view listings on http://rentownhomelistings.com/, a user would have been redirected to a page sponsored by

Lexington, whose relationship to the initial website is not immediately apparent. A user who seeks information on home listings would not expect to enter into a contract with an unrelated third party, here Lexington, on an unrelated subject.

Accordingly, because mutual assent is lacking, there is not an agreement to arbitrate and Defendant's motion should be denied.

        3.     The Conclusory Declaration Of John C. Heath In Support Of Defendant's Motion To Compel Arbitration Is Inadmissible.

To support its motion to compel arbitration, Defendant submitted Exhibits A through D as evidence. Exhibit A is the Declaration of John C. Heath, setting forth the hoops that he claims Plaintiff jumped through on a third party website in order to enter into an arbitration agreement. Exhibits B and C show screenshots of the third party website that are unconnected in any way to Plaintiff's identity. Exhibit D is a copy of the arbitration agreement to which Defendant is seeking to bind Plaintiff. As discussed above, none of this evidence links Plaintiff to the alleged conduct of assenting to an arbitration agreement. The Declaration lacks foundation and is based on inadmissible hearsay. The lack of evidence upon which Defendant's motion is based is also explored in Plaintiff's concurrently filed Objection to the Declaration of John C. Heath.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

## IV. CONCLUSION

Based on the foregoing, Plaintiff Edward Leslie respectfully requests that this Court deny Defendant's Motion to Compel Arbitration.

DATED this 1st day of April, 2016

Respectfully submitted,

**DRIGGS BILLS & DAY, P.C.**

_/s/ Karolina Kulesza_

Karolina Kulesza

Tina Wolfson (*pro hac vice*)
*twolfson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069
Phone: 310.474.9111
Fax: 310.474.8585

Joseph J. Siprut (*pro hac vice*)
*jsiprut@siprut.com*
Ismael T. Salam (*pro hac vice*)
*isalam@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342